UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:11–MC-202

| | |
|---|---|
| JOHNSON CONTROLS, )<br>)<br>Petitioner )<br>)<br>vs. )<br>)<br>PILGRIM'S PRIDE CORPORATION, )<br>)<br>Respondent. )<br>) | ORDER |

**THIS MATTER** is before the Court upon Petitioner's Motion for Approval of Petitioner's Testing Plan (Doc. No. 27) as well as several miscellaneous filings outlining the parties' proposed courses of action for testing the evaporators at issue in this action (Doc. Nos. 33, 34, 36). The Court HEREBY ORDERS that the testing of the evaporators at Pilgrim's Pride's Marshville, North Carolina plant comply with the following procedures unless other procedures are agreed upon by the parties:

(1) Blast cells three (3) and four (4) are to be shored in accordance with the plan detailed by Michael Pratt in Doc. No. 30, Ex. 2. The plan is to be carried out by qualified personnel licensed in North Carolina. Johnson Controls is to bear all costs for shoring the structures.

(2) A qualified and North Carolina licensed expert chosen by Pilgrim's Pride shall determine whether the blast cells are safe to enter after the shoring plan has been carried out. Any costs associated with assessing the safety of these cells, including expert costs, are to be borne by Pilgrim's Pride.

(3) If Pilgrim's Pride's expert requires further work be completed to ensure the blast

cells are safe to enter, then Johnson Controls shall bear the costs of such work up to $4,000. Any further costs may be paid by Pilgrim's Pride or the parties may petition the Court to determine whether the structure is safe or needs further shoring work and who shall pay the costs associated with any additional work.

(4) After the shoring of blast cells three (3) and four (4) has been completed, Johnson Controls is to retain a qualified and North Carolina licensed expert to assess any additional shoring necessary to enable safe access to the roof. Johnson Controls shall bear the cost of the additional shoring necessary to ensure safe access to the roof.

(5) A qualified and North Carolina licensed expert chosen by Pilgrim's Pride shall determine whether the roof is safe to access. Any costs associated with assessing the safety of the roof, including expert costs, shall be borne by Pilgrim's Pride.

(6) If Pilgrim Pride's expert requires further work be completed to ensure the roof is safe to access, then Johnson Controls shall bear the cost of such work up to $4,000. Any further costs may be paid by Pilgrim's Pride or the parties may petition the Court to determine whether the structure is safe or needs further work and who shall pay the costs associated with any additional work.

(7) After the shoring of the roof, Johnson Controls is to retain a qualified and North Carolina licensed expert to assess any additional shoring or other work necessary to test the evaporators in place. Johnson Controls shall bear the cost of the additional shoring or other work necessary to ensure safe testing of the evaporators.

(8) A qualified and North Carolina licensed expert chosen by Pilgrim's Pride shall determine whether the evaporators are safe to test in place. Any costs associated with assessing the safety of testing the evaporators in place, including expert costs,

are to be borne by Pilgrim's Pride.

(9) If Pilgrim's Pride's expert requires further work be completed to ensure the evaporators are safe to be tested in place, then Johnson Controls shall bear the costs of such work up to $4,000. Any further costs may be paid by Pilgrim's Pride or the parties may petition the Court to determine whether it is safe to test the evaporators or further work is required and who shall pay the costs associated with any additional work.

(10) The evaporators shall be tested in place in compliance with all applicable state and federal regulations. A qualified expert, paid for by Johnson Controls, shall be on site during the shoring and testing process to certify the testing process is in compliance with Occupational Safety and Health Administration (OSHA) standards.

(11) The evaporators are to be tested in compliance with the procedure detailed in Petitioner's Motion for Approval of Testing (Doc. No. 27), as agreed upon by the parties (See Doc. No. 33, ¶ 10).

(12) During equipment testing, the pressure used to test the evaporators shall not exceed twenty-five (25) pounds per square inch. The pressure is to be increased slowly, at no more than five (5) pounds per square inch per minute.

(13) The testing is to take no more than 72 total hours and is to take place at times that, in order of priority, 1) put the least amount of people in harms way, and 2) least disrupt business operations at the plant.

(14) The testing is to take place on a date agreed to by the parties, but within twenty-one days of the issuance of this order.

(15) Johnson Controls shall execute a release, waiver of liability, and assumption of risk

identical to the one executed on or about October 10-11, 2011 for the shoring plan and its implementation, the blast cell inspection, any further shoring completed, inspection of the evaporators, and the testing of the evaporators.

(16) Johnson Controls is to indemnify Pilgrim's Pride for any damage to the plant as a result of the shoring or testing completed unless it can be proven by a preponderance of the evidence that such damage occurred because of any extra procedures required by Pilgrim's Pride's expert.

(17) In the event that testing in place appears unsafe or too costly, at Johnson Controls' discretion, the evaporators may be removed for testing off site as detailed in Doc. No. 27, ¶ 5.

IT IS SO ORDERED.

Signed: March 8, 2012

Frank D. Whitney
United States District Judge